IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

BILL R WINCHESTER, et al.,

      Plaintiffs,

v.                                               CASE NO. 1:84-cv-00148-MP

FLORIDA FARM BUREAU EQUITIES INC., et al.,

      Defendants.

_____/

## **O R D E R**

      This matter is before the Court pursuant to a Motion for Injunction filed by Florida Farm

Bureau Federation ("Florida Federation"), Florida Farm Bureau Holding Corporation ("Florida

Holding"), and Carl B. Loop, Jr. (jointly "Movants") to prohibit Gene Badger, John Love,

Marvin Evans, Sid Banack, and John Willis (jointly "Respondents") from continuing the

prosecution of two claims pending in the Circuit Court, Ninth Judicial Circuit, for Orange

County, Florida.[1] (the "State Court," the suits collectively "State Court Actions") (Doc. 276).

The Respondents have filed a response (Doc. 278) which the Court has considered.

Additionally, the Movants sought to file a reply, Doc. 279, and the Respondents objected, Doc.

280. The Court declines to allow a further reply, but has considered the arguments in Doc. 279

and Doc. 280. For the reasons outlined below, the Movants' Motion for Injunction is

GRANTED.

---

[1] The two pending actions are <u>Gene Badger, et al. v. Florida Farm Bureau Federation, et al.</u>, Case No. 08-CA-018603-O, and <u>Gene Badger, et al. v. Florida Farm Bureau Federation, et al.</u>, Case No. 08-CA-0020996-O.

## I. __BACKGROUND__

In 1984, the minority shareholders ("1984 Plaintiffs") of Florida Farm Bureau Equities,

Inc. ("Florida Equities"), filed a class action ("Winchester Action") against Florida Equities'

majority shareholder, Florida Federation, Southern Farm Bureau Life Insurance Company

("Southern Life"), and Florida Equities (collectively, "1984 Defendants"). The Winchester

Action sought damages arising from Florida Equities' sale of Florida Farm Bureau Life

Insurance Company ("Florida Life") to Southern Life. The 1984 Plaintiffs claimed that Florida

Federation received more than a pro rata share of the sale proceeds because Florida Holding,

Florida Federation's wholly owned holding company, was given the right to purchase an

ownership interest in Southern Life, but the 1984 Plaintiffs were not given that right. In 1987,

the parties entered into a Stipulation of Settlement, which stated the material terms of a

settlement, and an Agreement, which obligated the parties to perform certain actions necessary

to the Settlement. The Stipulation of Settlement and Agreement (collectively, the "Winchester

Settlement") was approved in the Final Order and Judgment ("Final Judgment") dated November

19, 1987. In the Final Judgment, this Court expressly retained jurisdiction over the Winchester

Settlement:

> 8. Jurisdiction is hereby retained and the Class Members and the defendants retain
> all of their rights to all matters related to the administration, consummation,
> enforcement and/or interpretation of the terms of the Stipulation and the Agreement attached as
> Exhibits 1 and 2, respectively, to the Joint Motion for Entry of Conditional Order Approving
> Settlement filed by the Plaintiffs and the Defendants.

(Final Order and Judgment p. 5). Additionally, in the Stipulation of Settlement, the parties

agreed and the Court approved the Court's continuing jurisdiction in certain areas:

> 20. All proceedings with respect to the settlement described by this stipulation
> and the determination of all controversies relating thereto, including disputed
> questions of law and fact with respect to the validity of claims, shall be subject to

the jurisdiction of the United States District Court for the Northern District of Florida.

21. If the Court approves the settlement as provided herein. . .the parties shall submit for entry by the Court a proposed Final Order and Judgment. . . providing as follows:

> (d) Reserving jurisdiction over all matters relating to the administration, consummation, and enforcement of the settlement provided for herein.

29. The Court shall retain jurisdiction with respect to enforcement, construction and/or interpretation of the terms of the Stipulation of Settlement and any agreement(s) related thereto.

As part of the Winchester Settlement, the 1984 Defendants agreed that Florida Holding would issue a convertible debenture ("Debenture") to the 1984 Plaintiffs. The 1984 Plaintiffs later formed Plaintiffs' Shareholder Corporation ("PSC") to hold the Debenture. The Debenture provided that the 1984 Plaintiffs would be entitled to receive certain financial benefits, such as participation in dividends issued by Southern Life.

In 2002, some of the 1984 Plaintiffs ("Badger Plaintiffs") filed a complaint in state court against Florida Holding, Southern Life, and members of their respective boards of directors (collectively, "Badger Defendants") for breach of fiduciary duties and conspiracy to breach fiduciary duties by failing to declare reasonable dividends. In response, the Badger Defendants filed a Motion for Injunction in this Court to enjoin the Badger Plaintiffs from proceeding with the state court lawsuit. This Court granted the motion, and held that this Court was the proper Court to determine disputes involving the Winchester Settlement. On appeal, the Eleventh Circuit Court of Appeals vacated this Court's Order, and remanded for further proceedings. Following the Eleventh Circuit's remand but before proceedings began again in this Court, the parties settled. The current State Court Actions allege claims arising from Southern Life's purchase of the Debenture from PSC in 2004. The Respondents allege Southern Life, Florida

Holding, and Florida Federation engaged in activities that affected the value of the Debenture. (Doc. 278 at 7-11). Because these activities were not disclosed to the Respondents, Southern Life was able to later purchase the Debenture from PSC at a price below fair market value. (Doc. 276, Ex. A at 16; Doc. 278 at 11). The Respondents filed two claims, a class action complaint (the "Class Action Complaint")[2] and a shareholders' derivative complaint (the "Shareholders' Derivative Complaint")[3] in the State Court. The Class Action Complaint set forth three counts against Southern Life, Florida Federation, Florida Holding, and members of the board of directors of Florida Federation and Florida Holding, alleging (1) breach of the Stipulation of Settlement, (2) breach of fiduciary duty, and (3) conspiracy to breach fiduciary duties. (Doc. 278 at 11-12; Doc. 276, Ex. A at 3). The Shareholders' Derivative Complaint alleges, on behalf of PSC, the same three causes of action against Defendants and an additional count for fraud in the inducement. (Doc. 278 at 12; Doc. 276, Ex. B). Both the Class Action Complaint and the Shareholders' Derivative Complaint are currently stayed pending a ruling by this Court on the Movants' Motion for Injunction. (Doc. 281).

**II. <u>DISCUSSION</u>**

The Movants argue that this Court should enjoin the Respondents' State Court Actions because both actions allege breach of the Winchester Settlement and/or claims involving the interpretation of the convertible debenture given to Plaintiffs as consideration for the Winchester Settlement, which requires the Court to administer, enforce, and interpret provisions of the Winchester Settlement. (Doc. 276 p. 9). The Movants assert that the injunction they request falls

---

[2] <u>Gene Badger, et al, v. Florida Farm Bureau Federation, et al.</u>, Case No. 08-CA-018603-O.

[3] <u>Gene Badger, et al, v. Florida Farm Bureau Federation, et al.</u>, Case No. 08-CA-0020996.

within two exceptions to the Anti-Injunction Act, which allow injunctions when necessary (1) in aid of a court's jurisdiction, and/or (2) to protect or effectuate a court's judgment (the "relitigation exception"). (Doc. 276 p. 10). The Respondents argue that neither exception to the Anti-Injunction Act applies to Respondents actions because the State Court Actions involve the sale of the Debenture, and not its interpretation or administration. The Respondents therefore assert that the Motion for Injunction should be denied. (Doc. 278).

Generally, federal courts may "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. §1651(a); *Wesch v. Folson,* 6 F. 3d 1465, 1470 (11th Cir. 1993). This broad mandate of power is limited, however, by the Anti-Injunction Act, which prohibits a federal court from enjoining state court proceedings with three exceptions. The two exceptions relevant to this case allow a federal court to enjoin a state proceeding: (1) when necessary in aid of its jurisdiction, and (2) to protect or effectuate its judgments. 28 U.S.C. § 2283. As the court in *Burr & Forman v. Blair* stated, "in assessing the propriety of an injunction entered to stop a state court proceeding, the sole relevant inquiry is whether the injunction qualifies for one of the exceptions to the Anti-Injunction Act." 470 F.3d 1019, 1028 (11th Cir. 2006).

### A. Necessary in Aid of Jurisdiction

The United States Supreme Court has recognized that a federal court injunction of state court proceedings is necessary in aid of jurisdiction "to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs., et al.,* 398 U.S. 281, 295 (1970). The Eleventh Circuit recently addressed this exemption to the Anti Injunction Act in *Burr*, and stated that this exception was properly used "where an

injunction was necessary to protect and effectuate complicated judgments over which the federal court had retained jurisdiction." 470 F. 3d at 1029; *see also Wesch v. Folsom*, 6 F.3d 1465, 1470-71 (11th Cir. 1993) (affirming injunction of state court action to enforce court-ordered redistricting); *Battle v. Liberty Nat. Life Ins. Co.*, 877 F.2d 877, 880-82 (11th Cir.1989) (affirming injunction of state court action to enforce complex anti-trust judgment). The Eleventh Circuit has also held that a federal court has the authority to enforce the terms of a settlement agreement if the court "either incorporates the terms of a settlement into its final order of dismissal or expressly retains jurisdiction to enforce a settlement." *Am. Disability Ass'n Inc. v. Chmielarz*, 289 F.3d 1315, 1320 (11th Cir. 2002).

The Movants argue that an  injunction is necessary in this case to aid and preserve the Court's continuing jurisdiction over the Winchester Settlement. (Doc. 276 p.10). The Movants assert that the claims in the Class Action Complaint dispute critical parts of the Winchester Settlement, including the rights of the Class Members in the Debenture and whether the Class Members were owed a fiduciary duty by Movants. (Id. at 7). Similarly, the Movants assert that the Shareholder's Derivative Complaint alleges breach of the Winchester Settlement and/or claims involving the interpretation of the Debenture given to the Class Members as the consideration for the Winchester Settlement. (Id. at 9).

The Respondents argue that an injunction is not necessary to aid this Court's jurisdiction because the claims in State Court are wholly distinct from the claims associated with the Winchester Settlement. (Doc. 278 pp.17-20). The Respondents assert that while PSC's status as the holder of the Debenture arose from the Winchester Settlement, PSC's claims for breach of contract, breach of fiduciary duty, and conspiracy to breach fiduciary duties arise only in connection with the sale of the Debenture. As the actions arise from the sale of the Debenture, the claims are simply

attempts to enforce rights granted under the Winchester Settlement, and not an attempt to redefine those rights. (Id. at 20).

The Court believes that the actions pending in State Court, while not directly challenging the validity of the Winchester Settlement, will necessarily involve the construction and interpretation of its core provisions. As the Eleventh Circuit stated in *Henson v. Ciba-Geigy Corp.*, "a district court has the authority under the [All Writs] Act to enjoin a party to litigation before it from prosecuting an action in contravention of a settlement agreement over which the district court has retained jurisdiction." 261 F.3d 1065, 1068 (11th Cir. 2001)*; see also Wesch v. Folsom*, 6 F.3d 1465, 1470 (11th Cir. 1993); *Kelly v. Merrill Lynch, Pierce, Fenner & Smith*, 985 F.2d 1067, 1069 (11th Cir. 1993). In the State Court Actions, the Respondents allege that contractual and fiduciary duties created by the Winchester Settlement were breached by the Movants' actions leading up to PSC's sale of the Debenture to Southern Life. (Class Action Complaint pp. 28-30; Shareholders' Derivative Complaint pp. 27-29). The undersigned is convinced that the State Court will be forced to interpret the terms of the Winchester Settlement to determine (1) what contractual and fiduciary duties were conferred on the parties by the Winchester Settlement, and (2) whether a breach of those contractual and fiduciary duties occurred. *See Am. Disability Ass'n Inc. v. Chmielarz*, 289 F.3d 1315, 1320 (11th Cir. 2002)(if the district court "expressly retains jurisdiction to enforce a settlement, it may thereafter enforce the terms of the parties' agreement."). These issues involve the interpretation and enforcement of this Court's Final Order approving the Winchester Settlement. As this Court has retained jurisdiction over "all matters relating to the administration, consummation and enforcement" of the Winchester Settlement, we find that an injunction is necessary in aid of this Court's continuing jurisdiction over the Winchester Settlement. (Final Order and Judgment p.5).

**B. To Protect or Effectuate its Judgments**

The re-litigation exception is "essentially a res judicata concept designed to prevent issues that have already been tried in federal court from being relitigated in state court." *Wesch v. Folsom*, 6 F.3d 1465, 1471 (11th Cir. 1993). In *Wesch*, the Eleventh Circuit explained that in determining the applicability of the re-litigation exception to the Anti-Injunction Act, federal courts apply the law of the state in which they sit regarding the doctrine of *res judicata*. *Id.* In Florida, *res judicata* requires: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of parties; and (4) identity of the quality in the person for or against whom the claim is made. *See Albrecht v. State of Florida*, 444 So.2d 8, 12 (Fla. 1984).

The Movants assert that all four elements are met in this case. The Movants argue that the same cause of action is involved in the State Court suit as was involved in the original Winchester Action. Specifically, the Respondents' main allegation in the State Court suits is that the Debenture created attendant fiduciary duties in the Movants, which were breached by their actions in buying the Debenture from PSC. Therefore, the State Court actions challenge the status of PSC and the 1984 Plaintiffs under the Winchester Settlement and thus should be enjoined to avoid relitigation over the Winchester Settlement.

The Respondents disagree and argue that the original Winchester Action centered on the failure of Equities' minority shareholders to receive a pro rata share of the proceeds from the sale of Florida Life to Southern Life in 1984. In contrast, the state actions currently pending allege breach of the Winchester Settlement and breach of fiduciary duties arising from the sale of the Debenture to Southern Life in 2002. Thus, the Respondents argue, the Movants are unable to show that the same cause of action is involved in the State Court Actions as in the original Winchester Action.

The Court agrees with the Respondents. In *G.M. Brod & Co., Inc. v. Adler*, 845 F.2d 899 (11th Cir. 1988), the Eleventh Circuit affirmed the denial of a requested injunction under the relitigation exception of the Anti-Injunction Act. The Court held that the relitigation exception's requirements were not met because "[t]he record on appeal fails to indicate clearly to us that issues and claims raised in the state suit are identical to those raised and decided in the federal suit." *Id.* at 900; *see also Choo v. Exxon Corp.,* 486 U.S. 140, 148 (1988). Here, the issues and claims raised in the original Winchester Action and the current State Court Actions are not identical, but arise in connection with facts that occurred after the Winchester Settlement. Additionally, the issues in the State Court Actions could not have been addressed or resolved in the Winchester Action because the sale and activities leading up to the sale occurred approximately seventeen (17) years after the Winchester Settlement. Thus, the relitigation exception to the Anti-Injunction Act is not applicable under these facts. Although the relitigation exception does not apply, this Court grants the Motion for Injunction pursuant to the necessary in aid of jurisdiction exception to the Anti-Injunction Act.

## III.  CONCLUSION

In sum, this Court finds that an injunction of the State Court Actions is necessary to aid this Court's continuing jurisdiction over the interpretation and enforcement of the Winchester

Settlement.  Accordingly, it is hereby

### ORDERED AND ADJUDGED:

Doc. 276, the motion for injunction is hereby GRANTED, and the two state court actions referred to above are permanently enjoined.

Doc. 277, the motion of Southern Farm Bureau Life Insurance Company to join in Doc. 276, is granted.

Doc. 279, the motion to file a reply, is granted in part and denied in part.  The Court has considered the arguments contained in Doc. 279 but does not find any further reply to be necessary.

The Clerk is directed to set this matter for status conference, in court, to discuss how the parties intend to proceed in this case.

**DONE AND ORDERED** this _9th_ day of April, 2010

_____*s/Maurice M. Paul*_____
Maurice M. Paul, Senior District Judge